UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number: 21-CV-81117-CANNON/Reinhart

RUTH COLAS,

        Plaintiff,

v.

LOURDES-NOREEN MCKEEN RESIDENCE
FOR GERIATRIC CARE, INC., a Florida Not
For Profit Corporation D/B/A LOURDES
NOREEN MCKEEN RESIDENCE,

        Defendant.

_____/

**REPORT AND RECOMMENDATION REGARDING DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF NO. 12)**

Before the Court is Defendant Lourdes-Noreen McKeen Residence for Geriatric Care, Inc.'s ("LNMR") Motion to Dismiss Plaintiff Ruth Colas' ("Ms. Colas") Amended Complaint (ECF No. 12), which was referred to me for a Report and Recommendation by the Honorable Aileen M. Cannon. ECF No. 14. I have reviewed the Amended Complaint (ECF No. 7), Defendant's Motion to Dismiss, Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Amended Complaint (ECF No. 13), and Defendant's Reply Brief in Support of its Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 18). This matter is now ripe for decision. For the reasons discussed below, I **RECOMMEND** that the Motion to Dismiss be **GRANTED**, all

counts in the Amended Complaint be **DISMISSED WITHOUT PREJUDICE**, and Ms. Colas' request for leave to file a Second Amended Complaint be **GRANTED**.

## I. FACTS ALLEGED IN THE PLEADINGS[1]

Ms. Colas is a black, Haitian Licensed Practical Nurse ("LPN") who was employed at LNMR from 2014 to June 18, 2020. ECF No. 7 ¶¶ 16, 41, 115. Around June 11, 2020, Plaintiff learned that a family member she had recently seen had possibly been exposed to someone who tested positive for COVID-19. *Id.* ¶ 18. While on her way to work, Ms. Colas notified her supervisor, Marie Toussaint, as was required by the LNMR policy. *Id.* ¶ 19. Ms. Toussaint told Ms. Colas she needed to be tested for COVID-19, despite the fact that Ms. Colas reported feeling no symptoms. *Id.* ¶ 20. Ms. Colas asked Ms. Toussaint if she could get a COVID-19 test on site at LNMR. *Id.* Ms. Colas maintains that Ms. Toussaint directed her to speak with Glenda Kiernan, the Staff Development Coordinator in charge of the COVID testing site. *Id.* ¶ 22. Ms. Colas then proceeded to drive directly to the LNMR testing site, where she was immediately greeted by Ms. Kiernan and Marion Nehaus, the director of nursing at LNMR. *Id.* ¶ 23. Ms Kiernan did not allow Ms. Colas to be tested and instead asked her to immediately leave the premises. *Id.* ¶ 24.

---

[1] All paragraph citations (noted as "¶" or "¶¶") are references to the numbered paragraphs in the Amended Complaint. ECF No. 7. For purposes of these Motions, the Court accepts all well-pled factual allegations in the Amended Complaint, and all attachments thereto, as true and evaluates all plausible inferences derived from those facts in favor of Plaintiff. *See Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir. 20112); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC,* 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true.").

2

About one week later, while at home awaiting her COVID-19 test results, Ms. Colas received a call from Jaime El Georr, the Human Resources Director, who advised Ms. Colas that she was terminated from LNMR. *Id*. ¶ 25. Ms. Colas states that during this conversation with Ms. El Georr, she "disputed the facts allegedly supporting her termination . . . [and] complained that she had been treated differently and unfairly and was discriminated against by [Nehaus] and Kierman [and] requested to speak to the executive administrator, Louna Phillips." *Id*. ¶ 28. As alleged by Ms. Colas, Ms. El Georr apologized to Ms. Colas for the situation and advised that she would discuss the matter with Ms. Nehaus and Ms. Kierman ánd would inquire whether Plaintiff would be allowed to return to work." *Id*. ¶ 30. Ten days later, on June 29, 202, Ms. Colas received a letter from LNMR notifying her that her termination was final. *Id*. ¶ 31.

Plaintiff alleges that by denying her request to be tested on site and terminating her employment, LNMR acted with intentional disregard for her rights under Title VII and the FCRA. *Id*. ¶ 32. Plaintiff alleges (and LNMR does not disagree) that Ms. Colas was qualified for her position as an LPN at LNMR. ¶ 33. She argues that LNMR's reason for termination was pretextual because other similarly situated non-black non-Haitian employees reported to work when they had the virus and were not terminated. *Id*. ¶34. Specifically, the Amended Complaint references Sue Rivera, a Hispanic employee at LNMR who Ms. Colas claims had tested positive

3

for COVID-19 and reported to work yet was not terminated. *Id*. ¶ 27.[2] Furthermore, Plaintiff alleges that her "complaint of disparate treatment by Ms. [Nehaus] and Ms. Kierman was, at a minimum, a motivating factor in [LNMR's] refusal to investigate and/or reconsider" her termination. *Id*. ¶ 35.

## II.   LEGAL CLAIMS AND APPLICABLE STANDARDS

### A. *LNMR's Arguments*

LNMR argues that the Amended Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for several reasons. LNMR argues Counts I–III and V–VII (discrimination counts) should be dismissed because the Amended Complaint fails to allege well-plead facts sufficient to raise an inference of discrimination under either the FCRA or Title VII. ECF No. 12 at 5. LNMR argues first that the Amended Complaint fails to state the reason LNMR offered to Ms. Colas when it notified her of her termination. *Id*. at 6. Second, LNMR argues that the Amended Complaint does not provide sufficiently similar comparators in that it (1) fails to allege that the comparators reported to work while knowing they had tested positive for COVID-19 and (2) fails to allege that the supervisors at LNMR *knew* that the alleged comparators were exposed to COVID-19 or had tested positive at the time they were allowed to test on site. *Id*. at 6–7.

---

[2] In addition to Ms. Rivera, the Amended Complaint also references other non-black non-Haitian similarly situated LPNs at LNMR who either had symptoms of COVID-19 or believed they had been exposed to it, but were still allowed to get tested on site without disciplinary action. ECF No. 7 ¶ 21.

LNMR argues Counts IV and VIII (retaliation counts) should be dismissed for two reasons. First, failure to investigate is not an adverse employment action unless there is a separate harm caused by the failure to investigate. *Id*. at 8–9. Since Ms. Colas had already been terminated, LNMR argues there was no separate harm caused. *Id*. at 9. Second, LNMR argues the two retaliation counts should be dismissed because the alleged protected activity (Ms. Colas complaining to her supervisor about perceived discrimination) occurred *after* the negative consequence (the termination), so there is no causal relation between the protected activity and the termination. *Id*. at 9–10. LNMR argues that, like in *Jie Liu Tang v. Univ. of S. Fla.*, No. 8:05CV572T17MAP, 2005 WL 2334697 at *1 (M.D. Fla. Sep. 23, 2005), Ms. Colas' attempt to artfully describe LNMR's actions not as a "termination" but as a "failure to reinstate," is not sufficient to establish a causal relationship and preclude dismissal. *Id*. at 10–11.

B. *Ms. Colas' Arguments*

Regarding Counts I–III and V–VII, Ms. Colas argues that she is not, at this stage in the proceedings, required to allege facts regarding the comparators at the level of specificity that Plaintiff argues is required. ECF No. 13 at 3. She maintains that the Amended Complaint contains allegations with "the level of detail necessary to give Defendant fair notice of the nature of Plaintiff's claims and the grounds upon which they rest." *Id*.

Regarding Counts IV and VIII, Ms. Colas contends that the Amended Complaint comports with the Eleventh Circuit case law regarding causation: Plaintiff

"merely has to prove that the protected activity and the negative employment action are not completely unrelated," which can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. *Id.* at 5 (citing *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998); *see also Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)).

Finally, Ms. Colas argues that if the Court finds that the Amended Complaint is insufficient to state a claim, that she should be allowed the opportunity to file a Second Amended Complaint because there is no "substantial reason" to deny her that opportunity. *Id.* at 7. Ms. Colas further acknowledges that her omission of the reason given to her by LNMR for her termination was an unintentional error that can be easily cured should she be allowed the opportunity to file a Second Amended Complaint. *Id.* at 7.

    C.  *12(b)(6)*

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a claim must provide the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N.A.*, 534 U. S. 506, 512 (2002). While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-

6

unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U. S. at 678 (quoting *Twombly*, 550 U. S. at 557 (alteration in original)).

On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pleaded factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555 (citations omitted). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 570.

When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U.S. at 679. Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth. *See Scott v. Experian Info. Sols., Inc.*, No. 18-CV-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (J. Altonaga) ("Conclusory allegations made upon information and belief are not entitled to a

presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

### D. *Discrimination Claims*

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2.

The FCRA makes it an unlawful employment practice for an employer "[t]o discharge . . . or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . race, color, [or] . . . national origin." Fla. Stat. § 760.10(1)(a). The analysis for claims under Title VII is identical to the analysis for claims under the FCRA. *See Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004) ("The [FCRA] was patterned after Title VII, and Florida courts have construed the act in accordance with decisions of federal courts interpreting Title VII.").

### E. *Retaliation Claims*

Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "The Act does not protect against all retaliation, but only retaliation that produces injury or harm." *Kavanaugh v. Miami-Dade Cty.*, 775 F.

Supp. 2d 1361, 1367 (S.D. Fla. 2011) (J. Turnoff) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66 (2006)).

The FCRA contains a similar provision and is analyzed under the same framework. Fla. Stat. § 760.10 *et seq.* (2020); *see Wilbur*, 393 F.3d at 1195 n.1 "'[A]n employee need not prove the underlying claim of discrimination for the retaliation claim to succeed.'" *Muggleton v. Univar USA, Inc.*, No. 07-10456, 2007 WL 2782027, at *3 (11th Cir. Sept. 26, 2007) (*quoting Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999)).

## III.   DISCUSSION

A. *Counts I–III and V–VII: Race, Color, and National Origin Discrimination under Title VII and FCRA*

To sufficiently state a claim for discrimination based on race or national origin, Ms. Colas must allege: (1) she was a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) she was "treated less favorably than a similarly-situated individual outside [her] protected class." *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

For these claims, LNMR does not dispute that Ms. Colas was a member of a protected class, that she was qualified for the job, or that she suffered an adverse employment action. Rather, LNMR argues that Ms. Colas has failed to show that Ms. Rivera or anyone else was a valid comparator to satisfy the fourth prong. The Eleventh Circuit requires that a plaintiff seeking to compare her treatment to

someone outside of her protected class demonstrate that she and her proffered comparators were "similarly situated in all material respects." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1226 (11th Cir. 2019). A "plaintiff must show that the comparator is similarly situated in terms of conduct, performance, and qualifications, and that no differentiating or mitigating circumstances distinguish their situation." *Dawson v. Miami-Dade Cty.*, No. 07-cv-20126, 2008 WL 1924266, at *9 (S.D. Fla. Mar. 11, 2008) (J. Seitz). A valid comparison turns "not on formal labels, but rather on substantive likeness." *Oirya v. Auburn Univ.*, 831 F. App'x 462, 464 (11th Cir. 2020) (citing *Lewis*, 918 F.3d at 1228).

Here, the Amended Complaint does not contain enough facts to plausibly allege that Ms. Colas and Ms. Rivera are similar in material respects.[3] The Amended Complaint tells us that Ms. Rivera is a Hispanic LPN who reported to work after testing positive for COVID-19. ECF No. 7 ¶¶ 21, 27. That is simply not enough information to assess whether Ms. Colas and Ms. Rivera are "similarly situated in all material respects." For example, the Amended Complaint does not allege that Ms. Rivera and Ms. Colas are supervised by the same person, have the same

---

[3] The Amended Complaint also references other un-named non-black non-Haitian similarly situated LPNs at LNMR who either had symptoms of COVID-19 or believed they had been exposed to it but were still allowed to get tested on site without disciplinary action. ECF No. 7 ¶ 21. This allegation alone is not enough to support the fourth prong of *McDonnell Douglas*. There are not sufficient facts alleged in the Amended Complaint to support the conclusory claim that these employees were similarly situated in all material respects. The Amended Complaint is devoid of the factual detail necessary for Ms. Colas to properly allege that the comparators are similarly situated in terms of "conduct, performance, and qualifications, and that no differentiating or mitigating circumstances distinguish their situation." *Dawson*, 2008 WL 1924266, at *9.

qualifications, have similar disciplinary histories, or even exhibited the same conduct. It does not allege whether Ms. Rivera, at the time she entered LNMR's premises, knew that she was positive for COVID-19 or that she had even come into contact with someone who had it. Furthermore, the Amended Complaint is silent as to whether LNMR supervisors in charge of termination decisions were aware that Ms. Rivera ever tested positive. Whether Ms. Rivera knew she had COVID-19 when entering the facility and, if so, whether she told LNMR (or LNMR learned it through another source) that she tested positive for COVID-19 is a critical, substantive fact necessary to the analysis of whether Ms. Rivera's and Ms. Colas' conduct is similar enough to qualify Ms. Rivera as a sufficient comparator. Therefore, Defendant's Motion to Dismiss should be granted as to Counts I–III and V–VII for that reason alone.

LNMR also argues that the discrimination counts should be dismissed because the Amended Complaint fails to state the reason LNMR offered to Ms. Colas when it notified her of her termination. ECF No. 12 at 6. I do not find this omission alone justifies dismissal. I must view the well-pleaded factual allegations in the light most favorable to Ms. Colas. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). In doing so, I can certainly draw the reasonable inference that LNMR told Ms. Colas it was terminating her because she knowingly entered the premises despite being exposed to COVID-19 and being told by her supervisor that she should not. *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556)("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."). Therefore, although Counts I–III and V–VII should be dismissed for the reasons previously discussed, Ms. Colas' omission of the reason she was given for her termination does not justify dismissal.

The Court must next consider whether to grant Ms. Colas leave to amend the Amended Complaint. Federal Rule of Civil Procedure 15 states that the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In general, a plaintiff must be given at least one opportunity to amend a complaint. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). "After a plaintiff's first opportunity to amend, leave for additional amendments may be denied because of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previous allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment.'" *In Re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-MD-2924-RLR, 2021 WL 2865869, at * 23 (S.D. Fla. July 8, 2021) (J. Rosenberg) (citing *Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir. 2005)). Denial of leave to amend is justified by futility when the complaint as amended would still be subject to dismissal. *See, e. g., Christman v. Walsh*, 416 Fed. App'x 841, 844 (11th Cir. 2011) ("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning the amended complaint would not survive a motion to dismiss.").

Ms. Colas should be granted leave to file a Second Amended Complaint. Permitting a Second Amended Complaint would not be futile, nor has there been

undue delay, bad faith, or repeated failure to cure errors.[4] Also, LNMR has not articulated undue prejudice from allowing an amended pleading. Therefore, I recommend that Counts I–III and V–VII be DISMISSED WITHOUT PREJUDICE and Ms. Colas be granted one final opportunity to amend.

Although the Court recommends that Ms. Colas be given one more opportunity to amend her pleading, Ms. Colas is cautioned not to repeat past errors. *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018) ("Implicit in [permitting] a repleading . . . is the 'notion that if the plaintiff fails to comply with the court's order— by filing a repleader with the same deficiency—the court should strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions.'") (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001), abrogated on other grounds by *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)).

---

[4] Ms. Colas has amended her original Complaint once. That amendment was made before she was advised by the Court (as she is in this Report and Recommendation) regarding LNMR's arguments in its original Motion to Dismiss. Thus, despite the fact that she has already amended her complaint once, I do not find that she has made repeated failures to cure errors about which she was specifically cautioned by the Court. *See Novoferreiro v. Israel*, No. 14–CIV–62674, 2015 WL 2152682, at *5 (S.D. Fla. May 6, 2015) (J. Bloom) (permitting leave to amend where "the Court did not reach [a specific] issue in its previous Order" of dismissal). *See also*, *Mighty v. Miami-Dade Cnty.*, No. 14-CIV-23285, 2015 WL 5031571, at *22 (S.D. Fla. June 9, 2015) (J. O'Sullivan) (recommending that plaintiff be provided with a final opportunity to correct the pleading deficiencies identified in the Report and Recommendation "because the Court denied the initial motion to dismiss as moot and did not address the substantive, alleged deficiencies in the original complaint"), *report and recommendation adopted*, 2015 WL 5031968 (S.D. Fla. Aug. 25, 2015) (J. Moreno).

B. *Counts IV and VIII: Retaliation*

To support a claim for retaliation under Title VII and the FCRA, a plaintiff must plausibly allege that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). To establish an adverse employment action, "an employee must show a serious and material change in the terms, conditions, or privileges of employment." *Webb v. Int'l Bus. Machines Corp.*, 458 F. App'x 871, 875 (11th Cir. 2012). "[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Pumpido v. Sch. Bd. of Miami-Dade Cty., FL.*, No. 02-cv-22548, 2003 WL 23312750, at *7 (S.D. Fla. Nov. 6, 2003); *see also Hinson v. Clinch Cty., Georgia Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000). Ms. Colas alleges two adverse employment actions: failure to investigate and failure to reinstate her employment. ECF No. 7 ¶¶ 94, 143.

1. Failure to investigate

There is no dispute that Ms. Colas' complaint of disparate treatment to the Human Resources Director was a protected activity. *See Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018) ("An employee's complaint about discrimination constitutes protected activity if the employee could reasonably form a good faith belief that the alleged discrimination existed. Termination is a materially adverse action.")

(quotations and citations omitted). But, for Ms. Colas' claim of retaliation to survive dismissal, she must allege an adverse employment action and a causal connection between the protected activity and the adverse employment action.

Ms. Colas alleges that LNMR failed to investigate her discrimination claim after she complained of disparate treatment to Ms. Georr. ECF No. 7 ¶¶ 94, 143. Regarding failure to investigate specifically, the Eleventh Circuit has held that "[i]n interpreting Title VII's retaliation provision . . . the plaintiff herself must suffer an adverse employment" action and that an employer's "failure to take action against other individuals does not constitute an adverse employment action," because it inflicts no harm on the plaintiff. *Entrekin v. City of Panama City Fla.*, 376 F. App'x 987, 995 (11th Cir. 2010) (employer's refusal to accept or investigate plaintiff's complaint against a coworker was unrelated to employer's ultimate termination of plaintiff or any other adverse employment actions she suffered) (quoting *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).

Because failure to investigate is not, by itself, an adverse employment action, Ms. Colas must allege a subsequent harm resulting from LNMR's failure to investigate. However, the order of events as described in the Amended Complaint precludes Ms. Colas form being able to show a subsequent harm because she had already been terminated when she lodged her complaint. Thus, there was nothing more that could be done to her by LNMR and its employees. Ms. Colas argues that the subsequent harm was the LNMR's failure to reinstate her employment, however, as discussed below, absent a showing by Ms. Colas that LNMR owed her a duty to

reinstate her after termination, there can be no further harm caused once she no longer is employed by LNMR.[5]

2. Failure to reinstate

Ms. Colas argues that the adverse employment action is not just LNMR's failure to investigate, but also its decision not to reinstate her employment. ECF No. 7 ¶ 143. On this argument, *Jie Liu Tang v. University of South Fla.*, 2005 WL 2334697, at *6 (M.D. Fla. Sep. 23, 2005) is particularly instructive. There, the Plaintiff alleged that in January 2002, she was notified by her employer, the Defendant, that her position was being eliminated in the coming months. *Id*. She was later notified that she would be given a new position, but that her salary would be reduced. *Id*. Plaintiff notified Defendant of her request to maintain her previous salary and then subsequently filed a complaint with the EEOC. *Id*. Plaintiff alleged that after her EEOC complaint, the Defendant "intentionally and maliciously refused to properly consider and rejected Plaintiff's request for her salary to remain the same at the time of her reassignment . . . ." *Id*.

The Court ultimately held that the employment action (lowering her salary) although potentially adverse, "occurred well before the [Plaintiff] filed the complaint with the EEOC" and the Plaintiff had not otherwise "presented any facts to suggest that the Defendant engaged in any type of adverse employment action toward

---

[5] Furthermore, the Amended Complaint is void of any facts that establish that LNMR owed her any duty to investigate her discrimination claims after they had already terminated her employment. Should Ms. Colas have a good faith basis to allege such facts, Ms. Colas is strongly encouraged to include them in subsequent pleadings should the Court grant her leave to amend.

Plaintiff *after* she filed a charge with the EEOC." *Id.* (emphasis added). In other words, the Plaintiff had failed to establish the third prong of a retaliation claim: a causal connection between the protected activity and an adverse employment action.

Similarly, even viewing the well-pleaded factual allegations in the light most favorable to Ms. Colas, the Amended Complaint does not establish that Ms. Colas had a right to be reinstated to her position after she was initially notified of her termination. Consistent with Fed. R. Civ. P. 11, if Plaintiff has a good faith basis to allege that LNMR owed her a duty to consider reinstating her employment after termination, then the Court invites Ms. Colas to allege that in subsequent pleadings, should she be granted leave to amend. Otherwise, considering only what is alleged in the four corners of the Amended Complaint, the court cannot reasonably infer a right to reinstatement and thus views this as a termination, instead of as a "failure to reinstate."

Termination itself is usually considered an adverse employment action. *See Jefferson*, 891 F.3d at 924. To establish a causal connection between the protected activity and the adverse employment action, "a plaintiff merely has to prove that the protected activity and the [adverse] employment action are not completely unrelated." *Goldsmith*, 513 F.3d at 1278. The protected activity and adverse employment action are not completely unrelated when the employer knows of the protected activity *at the time* of the negative employment action. *Id.* (emphasis added). Causation may also be inferred by showing close temporal proximity between the protected activity and the adverse employment action. *Thomas v. Cooper*

17

*Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798–99 (11th Cir.2000)).

Ms. Colas then must allege a causal connection between her complaint to HR and her termination. As LNMR correctly points out, according to Ms. Colas' own Amended Complaint, the first time she spoke to anyone about her perceived discrimination was *after* she had been terminated. ECF No. 7 ¶¶ 25, 28. Put differently, LNMR was not aware of Ms. Colas' discrimination complaint *at the time* it made and carried out the decision to terminate her employment. *Goldsmith*, 513 F.3d at 1278. Thus, the Amended Complaint fails to establish the third prong of a retaliation claim because it does not establish a causal connection between the protected activity and the adverse employment action.

Because the Amended Complaint fails to sufficiently allege retaliation by way of both failing to investigate and failing to reinstate, LNMR's Motion to Dismiss should be GRANTED as to Counts IV and VIII.

As previously discussed, leave for additional amendments may be denied because of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previous allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Andrx Pharms., Inc.*, 421 F.3d at 1236.

Ms. Colas should be granted leave to file a Second Amended Complaint. There is a possibility that Ms. Colas has a good faith basis to allege facts in an amended pleading that would cure the defects described above. Thus, permitting a Second

18

Amended Complaint would not be futile. Furthermore, there is no evidence of undue delay, bad faith, or repeated failure to cure errors. And finally, LNMR has not articulated undue prejudice from allowing an amended pleading. Therefore, I recommend that Counts IV and VIII be DISMISSED WITHOUT PREJUDICE and Ms. Colas be granted one final opportunity to amend.

## IV.    RECOMMENDATION

1. For the foregoing reasons, Defendant LNMR's Motion to Dismiss (ECF No. 12) should be **GRANTED** as to all counts.

2. Plaintiff's Amended Complaint (ECF No. 7) should be **DISMISSED WITHOUT PREJUDICE**.

3. Plaintiff's request for leave to file a Second Amended Complaint should be **GRANTED**.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and**

**Recommendation.**

      **DONE AND SUBMITTED** in Chambers this 29th day of September, 2021, at

West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE